**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Case Number: 25-cr-40042-TC |
| **JAIME SOLAYA CLAVERO**, | |
| Defendant. | |

**ORDER DENYING MOTION FOR PRETRIAL DETENTION**

Defendant Jaime Solaya Clavero has been charged via Indictment with a single count: Count 1, False Statement During Purchase of a Firearm, 18 U.S.C. § 922(a)(6).  ECF No. 1.  The Government requested pretrial detention, ECF No. 2, and a detention hearing occurred on August 7, 2025.

For the reasons stated on the record and as memorialized in this Order, the Court found that the Government failed to meet its burden to move for pretrial detention and the Motion for Pretrial Detention was denied.

**I.      ANALYSIS**

**A.      Legal Standard**

The Government's request for pretrial detention is evaluated pursuant to the Bail Reform Act, 18 U.S.C. § 3142.  As always, the Court begins with the Supreme Court's reminder that in "our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The Bail Reform Act requires a two-step process in evaluating the Government's request for pretrial detention.  First, the Court must decide whether the Government has a basis to move

for pretrial detention. This decision is governed by 18 U.S.C. §§ 3142(f)(1) and (f)(2). Only after

that threshold step is resolved in the Government's favor does the Court move to the second step,

which is to evaluate whether the Government has met the applicable burden for Defendant to be

detained.

The Bail Reform Act does not expressly state the burden of proof required at step one.

"Several courts have found a preponderance of the evidence to be the appropriate burden at this

stage." *United States v. Pavon-Andino*, No. CR 25-MJ-00022-TPO, 2025 WL 446143, at *1 (D.

Colo. Feb. 10, 2025) (collecting cases). At the hearing, the Court asked the parties what standard

it should apply for this analysis. For the purposes of this detention hearing, the parties agreed that

the preponderance of the evidence standard should govern step one.

The Government did not allege that it had any basis to move for detention pursuant to 18

U.S.C. § 3142(f)(1) and relied on 18 U.S.C. § 3142(f)(2) exclusively. 18 U.S.C. § 3142(f) states

in relevant part that the court:

> shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> . . .
>
> **(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>
> > **(A)** a serious risk that such person will flee; or
> >
> > **(B)** a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The Government asserted that it had two bases to move for pretrial detention pursuant to

18 U.S.C. § 3142(f)(2). *First,* the Government alleged that there is a serious risk that Defendant

will obstruct or attempt to obstruct justice, pursuant to 18 U.S.C. § 3142(f)(2)(B).  *Second*, the Government alleged that there is a serious risk that Defendant will flee, pursuant to 18 U.S.C. § 3142(f)(2)(A).  Defendant disputed that the Government had met its burden to move for detention for either reason.  Both sides presented proffers and legal arguments during the hearing in support of their respective positions.

### B.    Serious Risk of Obstruction

The Bail Reform Act does not define what it means to obstruct or attempt to obstruct justice and courts have struggled to define the types of conduct that fit within § 3142(f)(2)(B).[1]  But what is clear from the face of the statute—which requires an analysis of what the defendant "will" do— is that the focus is on what the defendant will do in the future, not on what he has done in the past.[2] While past conduct can certainly inform the Court as to what Defendant may do, past conduct alone may not be enough to demonstrate the serious risk of obstruction in the future.[3]  The

---

[1]    *See, e.g., United States v. DeGrave*, 539 F. Supp. 3d 184, 199-200 (D.D.C. 2021) (discussing cases involving witness tampering and deleting relevant evidence and stating that the focus of this analysis is on whether the defendant "will obstruct the integrity of this judicial proceeding.").

[2]    *See United States v. Madej*, No. 22-40009-TC, 2022 WL 715098, at *3 (D. Kan. Mar. 10, 2022) ("By its plain language, this connotes actions that a defendant *will* take in the future if the defendant is released on bond, above and beyond the actions the defendant has already taken or will take if he is detained."); *United States v. Madoff*, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009) ("The question is not simply whether Madoff's actions can be considered obstruction, but whether there is a *serious* risk of obstruction in the future. The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward.").

[3]    *See, e.g., United States v. Lamar*, 600 F. Supp. 3d 714, 722 (E.D. Ky. 2022) ("[T]he Court finds that a defendant's past efforts to conceal his criminal activity and mask illicit proceeds do not necessarily suggest future serious risk of obstructing justice."); *DeGrave*, 539 F. Supp. 3d at 200 (D.D.C. 2021) (finding that a defendant's conduct, including deleting relevant social media posts and other evidence regarding his alleged crimes, using encrypted messaging applications, and assisting another defendant in evading law enforcement were "emblematic of the type of conduct that raises concern about obstruction of a judicial proceeding").

Government raised two arguments in support of its allegation that there is a serious risk Defendant will obstruct or attempt to obstruct justice, neither of which met its burden.

*First,* the Government argued that Defendant has in the past refused to complete certain immigration-related paperwork, which the Government argued means that he will continue to refuse to execute paperwork in the future.  At the hearing, it was unclear exactly what new paperwork the Government believes Defendant is required to execute voluntarily while he is pending both an Indictment and an ICE detainer.  To the extent the Government is alleging that he will continue in his refusal to execute unspecified paperwork, it is unclear how this conduct shows a risk that Defendant will obstruct justice in the future.[4]  At most, the Government argues that Defendant will continue his current conduct, which the Government has not tied to obstructing the current judicial proceedings.

---

[4]     As another judge in this District stated when confronted with similar allegations by the Government:

> By its plain language, this connotes actions that a defendant *will* take in the future if the defendant is released on bond, above and beyond the actions the defendant has already taken or will take if he is detained. . . . .  In other words, it authorizes the court to detain the defendant to prevent further obstruction of justice.  But Madej already refused to fill out the paperwork, and the court is persuaded that this will continue regardless of whether he is detained. After all, ICE repeatedly warned him that he could be criminally prosecuted and imprisoned for this, but he still refused. He has now been indicted, and yet he still refuses.  The court is therefore unpersuaded that there is any circumstance in which he will voluntarily sign the paperwork necessary to assist with his deportation to a foreign country that is entirely unfamiliar to him; he would rather remain in the United States, even if incarcerated. Consequently, the government has not established a serious risk that Madej "*will* obstruct or attempt to obstruct justice" because the status quo will continue regardless of whether he is detained.

*Madej*, 2022 WL 715098, at *3.

4

*Second*, as alleged in the Indictment, the Government argues that Defendant has made a false representation in his attempted purchase of a firearm—namely that he is a citizen of the United States when he is a citizen of Cuba. The Government argues that this, too, shows a risk that Defendant will obstruct or attempt to obstruct justice. But this allegation again is tied to a single instance of past conduct. On the record before the Court, Defendant does not have a history that indicates he will, in the future, obstruct the integrity of this judicial proceeding. As stated on the record, the Court did not find that the Government met its burden of establishing by a preponderance of the evidence that there is a serious risk that Defendant *will* obstruct or attempt to obstruct justice.

### C.      Serious Risk of Flight

The Government has not argued—nor could it—that the existence of an ICE detainer is evidence that Defendant will flee, much less that the ICE detainer alone demonstrates that Defendant poses a serious risk of flight. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) ("We hold that, in the context of § 3142(f)(2), the risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant."); *see also id.* at 1338 ("'a defendant is not barred from release because he is a deportable alien.'" (internal citations omitted)). Instead, the Government argues that Defendant does not have sufficient ties to the District of Kansas and poses a risk of flight to Miami, where he has ties, or potentially even to foreign countries, such as Cuba, his country of origin.

The parties did not cite to and the Court has not found any Tenth Circuit authority on what specific factors should be considered in undertaking this step one analysis regarding whether Defendant poses a serious risk of flight and whether the defendant's citizenship impacts this analysis. District courts within the Tenth Circuit have looked at a variety of factors utilized by

circuit and district courts from across the country to guide this analysis. At the detention hearing, the Government relied upon the five risk-of-flight factors discussed in *Pavon-Andino*, 2025 WL 446143, which include: (1) a "[p]rior violation of the terms of his supervised release;" (2) "[m]ultiple unlawful entries into the United States;" (3) "[p]rior failure to appear when required in state court;" (4) "[u]se and possession of fraudulent identity documents;" and (5) "[t]he severity of the potential punishment and the weight of the evidence against him." *Id.* at \*2 (applying factors used by the Ninth Circuit in *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)).[5] In a case "specifically concerning a defendant who is not a lawful resident of the United States," as is the case here, courts have considered additional factors, including: "[i]ncentives to flee"; "[a]bility to flee"; "[t]ies to the jurisdiction and the United States"; and "[r]eliability and trustworthiness of the defendant." *Id*. (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140). The Court addresses all of these factors because these were the factors analyzed by the parties at the detention hearing.

### 1. Serious Risk of Flight Factors

In evaluating the five risk-of-flight factors to determine whether the Government has met its burden to establish that there is a serious risk that Defendant will flee, the Court finds that the Government failed to meet its burden. Factors (1) through (4) all weigh in favor of Defendant.

---

[5]    The Court acknowledges that the Ninth Circuit discussed these factors originally as a "non-exhaustive list of primary factors that court should consider in determining whether a defendant . . . presents a *risk of non-appearance* under § 3142(g)[.]" *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1139 (D. Idaho 2023) (emphasis original) (citing *Santos-Flores*, 794 F.3d at 1092). "But because risk of non-appearance and risk of flight are slightly different concepts, [] applying the *Santos-Flores* factors to risk of flight is more nuanced and deserves additional examination." *Id.*

*First*, Defendant's criminal history is limited to a single Alien Inadmissibility charge in 2022.  The Government did not argue that there are prior terms of supervised release, much less that he violated any such terms.

*Second*, Defendant's criminal history is limited to that immigration-related arrest, likely demonstrating a single unlawful entry into the United States.  Because he does not have multiple unlawful entries into the United States, this factor weighs in the Defendant's favor.

*Third*, the Government did not allege that Defendant has been involved in any prior state court proceedings, much less that he failed to appear at any proceedings.  This weighs in his favor.

*Fourth*, the Government does not allege that he is in possession of or has previously used any fraudulent identity documents.  Instead, the Government acknowledged Defendant has a Kansas driver's license and work authorization in the United States.  This factor also weighs in his favor.

*Fifth*, the Indictment alleges that the single count is punishable by a term of imprisonment of not more than ten years, ECF No. 1 at 3, which the Government acknowledged is not a particularly severe potential punishment compared to most federal criminal sentences.  As to whether the evidence against Defendant is strong, this part of the factor arguably weighs against Defendant.  As the Government argued, there is alleged video footage of Defendant's attempt to purchase the firearm and there are his written statements representing that he is a United States citizen when he is alleged to be a citizen of Cuba.  As discussed at the hearing, Defendant intends to allege that there are language barriers that impacted his ability to fully understand the question he answered.  On the record before the Court at this stage of the proceeding, the Court finds this factor weighs against Defendant.  But when evaluating all of these factors, the majority weigh in favor of release.

### 2.    Immigration-Related Factors

The Court next turns to the four factors some courts have considered in cases involving a defendant who is not a United States citizen.  As discussed below, the Court finds that these factors both do and do not weigh in the Government's favor.

*First,* the Government essentially argues that Defendant has an incentive to flee because he is facing criminal charges, an allegation that is true as to any individual in federal court. Defendant countered this argument with his family and economic ties, including his ties to this District.  Defendant lives in Salina with his wife of ten years and their child.  Defendant has four other children, two of whom also reside in Salina.  Defendant has a job and is alleged to have authorization to work in this country.  At the hearing, Defendant's current employer submitted a written letter confirming that Defendant is a full-time employee and that "he is a valued employee in good standing[.]"  Defendant additionally submitted an email written by his niece, who is a pharmacist in Florida, explaining Defendant's close relationship with his family and his ties to the Salina community.  Again, while there may be some incentive to flee, Defendant's unique familial and economic ties counterbalance any purported incentive to flee in this specific case.

*Second,* the Government argues that Defendant has the ability to flee because he has some financial resources, a vehicle, and family ties to Florida, including family-owned property.  On the other hand, the Pretrial Services Report shows that Defendant is of limited financial means, he is the sole financial provider for his family, and he does not appear to have a valid passport.  While he has family ties to Florida, those are known ties that could be monitored by Pretrial Services. And unlike cases in which there is an allegation that a defendant could easily return to a home country like Mexico, there is no allegation that Defendant has the finances, ability or interest in returning to Cuba.  This factor does not weigh in the Government's favor.

*Third*, the Court acknowledges that Defendant does not have long-term ties to Kansas. Defendant has lived at his current residence for only one month and in Salina for a just over one year.  But between his time in Kansas and in Florida, he has substantial ties to the United States generally and the Government does not allege any continuing ties to Cuba.  At the hearing, the Government expressed concern that Defendant had an incentive to return to Miami, Florida, but did not argue that he would flee to Cuba or otherwise attempt to flee the jurisdiction of the United States.  The Court finds this factor weighs in Defendant's favor.

And *fourth*, the Court finds this factor to be neutral.  Defendant is alleged to be in the country illegally and to have lied on a form, which raises concerns about his reliability and trustworthiness.  But there are no allegations that Defendant has used fraudulent identity documents and Defendant's representations to Pretrial Services were verified.  Even if this factor were to weigh in the Government's favor, the Court finds that the majority of the above factors weigh in favor of Defendant.

In conclusion, while Defendant may pose some risk of flight if released, the Government failed to establish by a preponderance of the evidence that there is a serious risk of flight.  For these reasons, the Court denies the Government's motion for a detention hearing, finding there to be no serious risk that Defendant will obstruct or attempt to obstruct justice pursuant to 18 U.S.C. § 3142(f)(2)(B) and no serious risk that Defendant will flee pursuant to 18 U.S.C. § 3142(f)(2)(A).

Dated August 26, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

9